United States District Court
Western District of Michigan

Najeem Naseer
        Plaintiff,
vs.

Kim Johnson (individually and in
his official capacity), East Lansing
Police Department, George
Lahanas (individually and in his
official capacity), City of East
Lansing, Jeff Thomas (individually
and in his official capacity), Jacob
Cortez (individually and in his
official capacity), Jason Cotton
(individually and in his official
capacity), Jose Viera (individually
and in his official capacity), Other
Unknown John or Jane Does
(individually and in their official
capacities),
        Defendants.

Case no: 1:22-cv-388

Hon.

**COMPLAINT**

**DEMAND FOR JURY TRIAL**

---

**Dustyn Coontz (P80102)**
Attorney for Najeem Naseer
1100 W. Saginaw St.
Suite 4A
Lansing, MI 48915
(517) 940-8004
dc@coontzlaw.com

**Anthony Chubb (P72608)**
Attorney for Defendants
Tenth Floor Columbia Center
101 West Big Beaver Road
Troy, Michigan  48084-5280
Phone: (248) 457-7054
achubb@gmhlaw.co

---

## COMPLAINT

Najeem Naseer, through his attorney, Dustyn Coontz, appears and states the following:

### JURISDICTION

1. Under 28 U.S.C. § 1331, this Court has original jurisdiction to hear all claims "arising under the Constitution [or] laws . . . of the United States."

2. This complaint brings suit under 42 U.S.C. § 1983 and alleges violations of the U.S. Constitution.

3. Under 28 U.S.C. § 1367, this Court also has supplemental jurisdiction for "all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III."

4. This complaint also alleges violations of Michigan state law, but the facts supporting the state claims are the same facts supporting the federal claims.

## VENUE

5. Venue is proper both because at least one defendant resides in this District[1] and because the events "giving rise to the claim occurred" in this District.[2]

## PARTIES

6. Plaintiff, Najeem Naseer, resides at 1320 Deerpath Lane, Apt. 21, East Lansing, Michigan 48823, an apartment at Deerpath Apartments.

7. At all material times, defendant Kim Johnson was the Police Chief with the East Lansing Police Department (ELPD) and was acting individually and in his official capacity.

---

[1] 28 U.S.C. § 1391(b)(1); *see also* 28 U.S.C. § 1391(c)(2).
[2] 28 U.S.C. § 1391(b)(2).

8. At all material times, defendant George Lahanas was the City Manager of the City of East Lansing and was acting individually and in his official capacity.

9. The City of East Lansing is part of Ingham County, a political subdivision of Michigan located in the federal Western District of Michigan.

10. At all material times, Sergeant Jeff Thomas was employed by the ELPD.

   a. While being sued in his individual capacity, Thomas was acting under color of state law as an employee of the ELPD.

11. At all material times, Jason Cotton was employed by the ELPD.

   a. While being sued in his individual capacity, Cotton was acting under color of state law as an employee of the ELPD.

12. At all material times, Jacob Cortez was employed by the ELPD.

a. While being sued in his individual capacity, Cortez was acting under color of state law as an employee of the ELPD.

13. At all material times, Jose Viera was employed by the ELPD.

a. While being sued in his individual capacity, Viera was acting under color of state law as an employee of the ELPD.

14. Defendants Other Unknown John or Jane Does are law-enforcement officers as well as city officials whose names are not available to Najeem Naseer at the time of filing.

a. Does employed by the ELPD will be sued both personally and in their official capacities.

b. Does employed by the City of East Lansing will be sued both personally and in their official capacities.

## STATEMENT OF FACTS

### I. The Incident

15. The facts as described here are taken directly from the police reports of Sergeant Jeff Thomas and Officers Jason Cotton, Jose Viera, and Jacob Cortez of the ELPD, as well as their body camera footage.

16. On December 12, 2020 at approximately 6:20 AM, the ELPD received a 911 call from a woman who stated that she did not know where she was and claimed she was being assaulted with a knife.

17. When police arrived at Deerpath Apartments, an expansive apartment complex located in East Lansing, Michigan off of Haslett Road, with multiple apartment units spread over several acres of property, the police began attempting to locate the complainant by going to each townhouse and listening and looking for the possible incident.

18. Simultaneously, dispatch was attempting to gain a better "ping" on the complainant's location.

19. After receiving a screenshot of the GPS location from dispatch, the officers entered a building on the north end of the complex.

20. The officers did not hear anything on the first floor, so they moved up to the second floor.

21. One of the doors on the second floor was open.

22. At this time, several officers arrived on scene and Sergeant Thomas pushed open the door fully, loudly announcing the police officers' presence several times.

23. Sergeant Thomas and Officer Cortez entered the apartment with guns drawn.

24. Upon entrance, Sergeant Thomas noticed a light coming from what appeared to be a bedroom in the back of the apartment.

25. Officer Cortez reported hearing faint whimpers made by who he assumed was a woman.

26. The reports of the four police officers who witnessed the incident offer similar yet somewhat different descriptions of what was seen in the bedroom. All officers consistently wrote that the woman was partially clothed and hysterical and that the man was completely nude. The man and woman were subsequently identified as Plaintiff Najeem Naseer and complainant Tamara Ivy.

   a. Officer Cortez reported that he saw Naseer laying on the bed and Ivy who appeared hysterical and crying, who then got out of bed and left the room upon Cortez's instruction. He reported that Sergeant Thomas retrieved a large knife lying next to Naseer on the bed.

   b. Officer Cotton reported that he saw Naseer on his right side facing Ivy to Ivy's left side on the bed. Cotton assisted Sergeant

Thomas in handcuffing Naseer, and a large knife was found directly under his body.

c. Officer Viera reported that he arrived on scene when Thomas and Cotton were handcuffing Naseer.

d. Sergeant Thomas reported that he observed an Arabic male having sexual intercourse with a white female. Notably, this is the only report that offers this specific information about witnessing any sexual intercourse. This was later found to be false. Thomas also reports that after handcuffing Naseer and rolling him off the bed, a large knife was then revealed to be under his body.

27. Officer Cortez left the scene to find the Chrysler 300 that Ivy claimed Naseer drove, and this was how the police identified Naseer.

28. The officers then brought Naseer to the ELPD Jail.

29. Back at the scene, officers interviewed Ivy, who was visibly intoxicated and took a PBT, revealing she had a 0.16 BAC.

30. Evidence located at the scene included the knife, an iPhone that appeared to have been recording for the previous two hours and 30 minutes, and a used condom.

31. The ELPD later obtained a search warrant to view the contents of his phone, which completely contradicted the report made by Sergeant Thomas.

32. Naseer was arrested on a charge of first-degree criminal sexual conduct.

## II. The Interview with Tamara Ivy and Subsequent Communications

33. The facts as described here are taken from Officer Traci Sperry's reports as well as the body camera footage of the interview with Ivy in her hospital room during the morning following the incident.

34. Shortly after the incident described above, Ivy was transported to the Emergency Room at Sparrow Hospital in Lansing for an examination.

35. At approximately 9:20 AM, Officer Traci Sperry arrived to interview Ivy.

36. Ivy explained that she knew Naseer because he worked at a gas station near an area in which she once lived.

37. She went on to explain that she used to "trick," a word that she used to describe prostitution in which she would either be paid with drugs or money.

38. Ivy stated that she used to "trick" with Naseer's brother and that Naseer was aware of this, and Naseer had attempted to have sex with her on previous occasions.

39. At approximately 2:11 AM on December 12, 2020, Ivy began messaging Naseer on Facebook after several missed calls from him.

40. Naseer asked Ivy to come over and stated that he had money for her.

41. Ivy understood this to mean that he was going to pay her for sex.

42. After some back and forth, Ivy asked him if he had any alcohol and
Naseer responded that he had liquor.

43. Ivy told Naseer that she wanted to have sex with him and Naseer
ordered her an Uber to transport her to his apartment.

44. Ivy explained to Sperry that they began to have sex, but then it
became too rough for her liking and she asked him to stop.

45. Each time she asked him to stop, he did stop.

46. After that initial interview on the morning of December 12, 2020, Ivy
sent Sperry several emails, text messages, and voicemails stating that
this was a mistake and that she did not wish to press charges.

## III. After the Incident

47. On December 12, 2020, the ELPD arrested Naseer and transported
him to the Ingham County Jail.

48. Two days later, the ELPD issued a press release stating that officers had "stopped the assault," naming Naseer, and including his mugshot.

49. On December 14, 2020, Naseer was arraigned on felony charges of first degree criminal sexual conduct, kidnapping, assault with intent to do great bodily harm, and assault with a dangerous weapon.

50. Naseer spent about two weeks in jail without bond until bond was set and posted at $25,000.

51. When the prosecutors received the evidence *weeks* later, on February 17, 2021, the charges were dismissed by Judge Andrea Larkin at the request of the Ingham County Prosecutor's Office.

52. Although the charges were dropped, a Google search of Naseer's name leads to a Lansing State Journal article explaining that he was arrested on these charges.[3]

---

[3] Ken Palmer, *East Lansing man charged in reported sex assault at apartment building*, Lansing State Journal (Dec. 14, 2020, 6:15 PM), https://www.lansingstatejournal.com/story/news/local/2020/12/14/east-lansing-sex-assault-apartment-complex/6549295002/.

13

53. Because of his unlawful deprivation of liberty and the damage done to his reputation among his community, Naseer has suffered extreme emotional distress from his arrest and having to navigate the criminal-justice system.

## CLAIMS

54. Generally, the Fourteenth Amendment's Due Process Clause "incorporates" the Fourth Amendment in full.[4]

55. Fourth Amendment violations are therefore cognizable under 28 U.S.C. § 1983.

## I. Illegal Search Under the Fourth Amendment to the United States Constitution

56. The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."[5]

---

[4] *Wolf v. Colorado*, 338 U.S. 25, 26 (1949).
[5] U.S. Const. amend IV.

57. There was an illegal search of Naseer's residence during the initial intrusion because this intrusion was not justified by exigent circumstances attributable to Naseer or his residence. The officers arrived at the apartment complex with no direction of where to go, and just searched building to building until they heard something out of the ordinary.

58. The Fourth Amendment serves to protect Naseer from this type of illegal search in his own home.

59. Each defendant is responsible for this violation of Naseer's Fourth Amendment rights.

## II. Invasion of Privacy: Intrusion

60. The tort of intrusion occurs when there is an unreasonable and highly offensive intrusion upon one's seclusion.

61. Najeem Naseer was wrongfully arrested (i.e., *unreasonably* seized) in his own home.

62. Sergeant Thomas's lies caused this.

63. So did the remaining defendants' unreasonable reliance on those lies.

64. Each defendant is liable for this intrusion into Naseer's seclusion.

## III. False Arrest Under the Fourth Amendment to the United States Constitution

65. The Fourth Amendment to the United States Constitution allows for arrests to be made without a warrant, "but upon probable cause."[6]

66. Probable cause exists where "the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that" a crime has been or is being committed.[7]

67. Naseer's arrest was not supported by probable cause.

68. The ELPD received a 911 call from an unnamed woman claiming she was being assaulted with a knife at an unknown location. The officers

---

[6] *Id.*

[7] *Carroll v. United States*, 267 U.S. 132, 162 (1925).

arrived at an expansive apartment complex where the station was able to trace the location of the call, and went from building to building until they heard something. This situation would not "warrant a man of reasonable caution" that a crime has been or is being committed.

69. Each defendant caused and is liable for this false arrest under the Fourth Amendment.

## IV. False Arrest Under Michigan Law

70. Likewise, the allegations in paragraphs 65–69 form the basis for the distinct Michigan tort of false arrest.

71. The Michigan tort of false arrest requires that an arrest be (1) illegal and (2) unjustified because (3) the arrest is not supported by probable cause.

72. For the reasons stated in paragraphs 65-69, there was no probable cause.

73. Each defendant caused and is liable for this false arrest under Michigan law.

## V. False Imprisonment Under Michigan Law

74. Likewise, the allegations in paragraphs 65-69 form the basis for the distinct Michigan tort of false imprisonment, which requires intent of confinement and an act that either directly or indirectly results in confinement that the plaintiff is aware of.

75. These elements are satisfied from Naseer's initial false arrest all the way to his release on bond.

76. Each defendant caused and is liable for this false imprisonment.

## VI. Racial Discrimination Under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution

77. The Constitution states that "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or

property, without due process of law; nor deny any person within its

jurisdiction the equal protection of the laws."[8]

78. Press releases made by the ELPD are posted on the City of East

Lansing's public website.

79. The press release made by the City of East Lansing on its website

identified Naseer by name and with a mugshot before his

arraignment even took place, thereby associating Naseer with guilt

before receiving any due process of law.

80. The press release was an extraordinary move; the City of East

Lansing and ELPD typically never issue a press release with a

mugshot of someone in custody.

81. Upon information and belief, it is an even rarer occurrence when the

suspect is white.

---

[8] U.S. Const. amend XIV, § 1.

82. Naseer is a man of Arabic descent and Ivy is a white woman. Sergeant Thomas made sure to note this in his report of the incident, and it is one of the few details that is not a falsity within the report.

83. Notably, Thomas's report is the only one to mention Naseer's race and the only one to claim he witnessed sexual intercourse, which was untrue.

84. The video on Naseer's iPhone negates nearly every other detail in Sergeant Thomas's report, which indicates that this invasion of Naseer's privacy was racially motivated.

85. The actions of each defendant led to this constitutional violation.

## VII. Racial Discrimination Under the Equal Protection Clause of the Michigan Constitution

86. The allegations in paragraphs 77-85 also form the basis for a violation of the Equal Protection Clause of the Michigan Constitution.

20

87. The Michigan Constitution states that "No person shall be denied the equal protection of the laws; nor shall any person be denied the enjoyment of his civil or political rights or be discriminated against in the exercise thereof because of religion, race, color or national origin."[9]

88. The actions of each defendant led to this constitutional violation.

## VIII. Racial Discrimination Under the Michigan Elliott-Larsen Civil Rights Act

89. The allegations in paragraphs 77-88 also form the basis for a violation of Michigan's Elliott-Larsen Civil Rights Act.

90. The Elliot-Larsen Civil Rights Act prohibits "discriminatory practices, policies, and customs in the exercise of those rights based upon religion, race, color, national origin, age, sex, height, weight, familial status, or marital status."[10]

91. The actions of each defendant led to the violations of this Act.

---

[9] Mich. Const., art. I, § 2.
[10] *See* M.C.L. § 37.2101 *et seq.*

## IX. Invasion of Privacy: False Light

92. The tort of false light occurs when a defendant knowingly or
recklessly disregards a highly offensive false statement that is
publicized and places the plaintiff in a false light in the public eye.

93. Here, the City of East Lansing and the ELPD issued a press release
two days after the incident indicating that officers had "stopped the
assault," when Naseer had not even been arraigned on the charges.

94. The press release allows the reader to assume that an assault
occurred, thus holding Naseer out to be guilty of first-degree criminal
sexual conduct without due process of law.

95. The City of East Lansing and ELPD ignored the glaring
contradictions between the police officers' accounts of the incident:
Sergeant Thomas's report was the only one of four reports to mention
sexual intercourse, while the other three had no information within to
corroborate that account.

22

96. The remaining individual defendants recklessly disregarded whether the statements released in the published press release were true.

97. Naseer's charges were publicized on the City of East Lansing's website, along with his name and mugshot, clearly showing his race and fully displaying the City's discrimination.

98. The charges were completely dropped weeks later.

99. Each defendant is responsible for Naseer being cast in a false light.

## X. Slander

100.    Uttering false statements about someone being a criminal is defamation per se.[11]

101.    Sergeant Thomas lied about what he witnessed. Those lies led to Naseer being charged with first-degree criminal sexual conduct.

102.    These lies are directly negated in the footage captured by Naseer's iPhone.

---

[11] *See* M.C.L. § 600.2911.

103.    The City of East Lansing and the ELPD relied on those lies to

issue a press release.

104.    Naseer has suffered emotional and reputational harm as a result.

105.    Sergeant Thomas, the City of East Lansing, and the ELPD are

liable for slander.

## XI. Malicious Prosecution Under the Fourth Amendment to the United States Constitution

106.    The Fourth Amendment prohibits unreasonable searches and

seizures, including the right to be free from malicious prosecution.

107.    Naseer was maliciously prosecuted under the Fourth Amendment

because there was no probable cause for his prosecution for crimes

that carry the penalty of a life sentence, he experienced racial

discrimination from the moment the police entered his apartment

without a warrant, he suffered a deprivation of liberty beyond his

initial arrest, and the charges against him were then dropped.

108.    Naseer spent two weeks in jail for a crime he did not commit, and

will experience trauma from this incident as well as the subsequent

confinement for the rest of his life, and is now has a tarnished

reputation due to this malicious prosecution.

109.    Each defendant in some way participated in and caused Naseer's

malicious prosecution.

## XII. Statutory Malicious Prosecution Under Michigan Law

110.    Under M.C.L. § 600.2907, "Every person who shall, for vexation

and trouble or maliciously, cause or procure any other to be arrested,

attached, or in any way proceeded against, by any process or civil or

criminal action, or in any other manner prescribed by law, to answer

to the suit or prosecution of any person, without the consent of such

person, or where there is no such person known, shall be liable to the

person so arrested, attached or proceeded against."

111.    Here, Sergeant Thomas's report indicated that he witnessed sexual intercourse between Naseer and Ivy when that was later proven not to be true based on the video footage from Naseer's iPhone.

112.    If it were not for the footage from Naseer's iPhone, the malicious prosecution may be ongoing today.

113.    Whatever Sergeant Thomas's actual motives for the false report, they were certainly for purposes of vexation, trouble, or malice.

114.    Accordingly, Sergeant Thomas is liable to Naseer for statutory malicious prosecution.

115.    Similarly, the ELPD through the City of East Lansing issued a press release holding Naseer out to be guilty two days after the arrest without probable cause.

116.    The ELPD and City of East Lansing are liable to Naseer for statutory malicious prosecution.

## XIII. Common Law Malicious Prosecution Under Michigan Law

117.    Michigan common law allows for the tort of malicious prosecution when (1) the defendant(s) brought about the plaintiff's prosecution (2) without probable cause, (3) the case was dismissed, and (4) the defendants acted with malice or a primary purpose other than that of bringing the offender to justice.

118.    Again, whatever motives the ELPD, the City of East Lansing, and Sergeant Thomas had for lying, bringing Naseer to justice cannot have been among them.

119.    This was a targeted racial attack, which is evident from Sergeant Thomas's lies in the police report through the press release including Naseer's mugshot.

120.    Accordingly, all three parties are liable to Naseer for common-law malicious prosecution.

## XIV. Intentional Infliction of Emotional Distress

121.    Intentional infliction of emotional distress (IIED) occurs where a

defendant engages in extreme and outrageous conduct that causes a

plaintiff to suffer severe emotional distress.

122.    IIED can be satisfied when a defendant either intends the extreme

and outrageous conduct or is reckless in engaging in the conduct.

123.    Here, Naseer has suffered severe emotional distress from being

arrested and subsequently deprived of his liberty.

124.    Over one year later, Naseer is experiencing horrific flashbacks to

this incident, which is indicative of post-traumatic stress disorder.

125.    Because of this ordeal, Naseer has lost faith in the justice system

and fears law enforcement.

126.    He now knows that due to the color of his skin, he is a target of

law enforcement.

127.    Further, if anyone searches his name online, the first link that

appears is to a news article including his name and mugshot.

128.    The severe emotional distress and impact on Naseer for the rest of

his life are the direct results of the defendants' lies and actions.

129.    Lying about criminal behavior and holding someone out to be

guilty until proven innocent are directly contrary to the protections

offered by the both the United States and Michigan constitutions, and

therefore are both extreme and outrageous.

130.    The remaining individual defendants were reckless in relying on

these defendants.

131.   Each defendant is liable to Naseer for either intentionally or

recklessly causing his emotional distress.

## REQUEST FOR RELIEF

132.    Najeem Naseer requests actual and punitive damages for being unlawfully deprived of his liberty, suffering emotional distress, and having his reputation irreparably tarnished.

133.    Najeem Naseer requests that all defendants be permanently enjoined from employing Sergeant Thomas.

134.    Najeem Naseer requests attorney's fees under 28 U.S.C. § 1988 and M.C.L. § 600.2911.

## DEMAND FOR JURY TRIAL

135.    Najeem Naseer demands a jury trial on all issues raised in this complaint.

April 29, 2022                              /s/ Dustyn Coontz
                                           Attorney for Najeem Naseer